130 So.2d 211

Henry JONES

v.

STATE.

1 Div. 855.

Court of Appeals of Alabama.

May 9, 1961.

Wilters & Brantley, Bay Minette, for appellant.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

CATES, Judge.

Jones, convicted of murder in the second degree for the killing of Aaron Bell by cutting him with a knife, was sentenced to twenty years' imprisonment. From the judgment of the circuit court he brings this appeal.

Two points are argued in Jones's brief: (1) that the trial judge should have allowed the defense in cross-examination to bring out all of a conversation alluded to on direct examination; and (2) a statement by the solicitor in final argument,

"If I were to take this knife here and say, 'Foster [a juror], I am going to kill you' and I proceeded to kill you, then I would be guilty of murder in the first degree * * *"

was proper ground for a motion for a mistrial.

The tendency of the State's evidence ran: Jones, between 9:00 and 10 o'clock in the morning, Sunday, April 24, 1960, came to Aubrey Stanton's house in Belforest (or Belforest Road in Daphne), Baldwin Coun-

ty. Robert Bouler, a State witness, testified:

"A. He came and started jaw-jacking around and we asked who he was looking for and he said a monkey about my color."

Bouler and Jones followed Bell to "Minnie Pearl's."

Bouler went off but came back. He found Jones cutting at Bell, the latter still seated in his car. Bouler testified:

"Q. What did he do? A. Whenever he got through doing what he was going to do, he started walking towards me and I said 'Why you do that to this man'? and he said that he would cut me or any other son-of-a-bitch that done what he did to his wife.

\* \* \* \* \* \*

"Q. Now what exactly was the kind of threats Henry Jones made against Aaron the first time you heard him? A. He said he come to kill him and we went ahead and asked him why and he said him and some more boys taken his wife out."

Bouler saw Bell fall over with his head down in the car. Dooley McDonald took him to a hospital.

Dr. Claudius Jordan testified he examined Bell's body the day of the cutting and that "a stab wound into the heart" was apparently the cause of death.

The case for the defense consisted solely in testimony that Jones's wife had been raped by a group of men of whom Bell was one. She took the stand and testified that she had told her husband of this a week before he killed Bell.

Jones's brief argues the first claim of error from the general rule that where one party has, on direct examination, elicited part of a conversation then his opponent may, on cross-examination, bring out the whole, citing, inter alia, Day v. Downey, 256 Ala. 587, 56 So.2d 656.

The first ruling complained of came during the cross-examination of Bouler:

"Q. I believe you told Mr. Hendrix that he said he would kill any son-of-a-bitch that done his wife the way Aaron had done his wife. Did he tell you what that was?

"Mr. Hendrix: I object to any details.

"The Court: Sustain the objection."

The court made a second like ruling in the cross-examination of another witness for the prosecution, Aubrey Stanton.

The case of Colvin v. State, 37 Ala.App. 268, 70 So.2d 650, 653, provides an analogous factual setting. There the court, per Harwood, J., said:

" \* \* \* where in examination of a witness a party brings out part of a \* \* \* conversation, the other party may \* \* \* bring out the whole conversation on further examination. \* \* \*"

Against this appearance of error, the Attorney General argues that the wrong was without prejudice to Jones. The State points out that the sought for testimony came from subsequent testimony of Bouler and Stanton.

In the case of Bouler's later testimony, we do not agree with the State's contention that the defense was able to elicit from him on cross-examination all that it sought in the question to which the State had successfully objected beforehand. The later answers which came in on cross were:

"A. He said he taken his wife off— him and three youngsters—to go with her.

\* \* \* \* \* \*

"A. That [he] taken his wife off and the boys went with her." (Bracketed matter added.)

We consider that neither of these vague statements amplify Jones's conversation with Bouler.

Here relevancy or irrelevancy is not presented by the question, "Did he tell you what that was?" This question was a threshold one which called only for a "yes" or "no."

We cannot speculate as to how the cross-examination might have gone had Bouler been allowed to answer. Jones had a right to have the jury hear Bouler's answer on something the State itself had first hurled at Jones.

Because, in our view, another trial is due, we pretermit consideration of the claim of error in the solicitor's use of a juror as an illustrative example in his argument.

The judgment below in this cause is reversed and remanded for a new trial.

Reversed and remanded.